IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTOR MACIEL GARCIA,<br><br>　　　　　Petitioner,<br><br>　　v.<br><br>ATTORNEY GENERAL OF CALIFORNIA<br><br>　　　　　Respondent. | Case Number C 06-41 JF<br><br>ORDER[1] DENYING PETITION FOR WRIT OF HABEAS CORPUS |

　　　Petitioner Victor Maciel Garcia ("Garcia") seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons discussed below, the Court concludes that Garcia is not entitled to relief and will deny the petition.

**I.  BACKGROUND**

　　　Two eyewitnesses identified Garcia, who at the time was seventeen years old, as the person who fired several shotgun blasts during a gang altercation in an alley on May 5, 2002. A pellet from one of those blasts apparently hit a twelve-year-old girl in the leg and caused slight bleeding.

---

[1] This disposition is not designated for publication in the official reports.

On cross-examination at trial, one of those witnesses was asked by Garcia's counsel if she remembered talking with an officer on the night of the shooting. She answered in the affirmative. Garcia's counsel asked if the witness had told the officer that she was "unable to describe the suspects." She replied, "No, I never stated that." Garcia's counsel then attempted to refresh the witness's recollection with a police report from the night of the shooting that purportedly indicated that she had, in fact, been unable to identify any suspects. The court sustained the prosecution's objection to the use of the report as inadmissible hearsay, and Garcia's counsel was unable to show the report to the witness.

On September 9, 2002, a jury in the Stanislaus Superior Court convicted Garcia of: attempted murder by intentionally and personally using a firearm (Cal. Penal Code §§ 664/187 & 12022.53(d), count one); assault with a firearm (Penal Code §§ 245(a)(2) & 12022.5(a)(1), count three); assault with a firearm (Penal Code §§ 245(a)(2) & 12022.5(a)(1), count four); assault with a firearm (Penal Code §§ 245(a)(2) & 12022.5(a)(1), count six); and participation in a criminal street gang (Penal Code § 186.22(b)(1)). Additionally, as to count six, the jury found true the allegation that Garcia personally inflicted great bodily injury (Penal Code § 12022.7(a)). CT 166-167.

Before sentencing, Garcia requested a transfer to the juvenile court on the ground that at the preliminary hearing the magistrate did not find reasonable cause to believe that Garcia was subject to the discretionary provisions of Proposition 21.[2] Welf. & Inst. Code, § 707(d)(4).[3] In opposition, the prosecutor argued that Garcia had waived any jurisdictional irregularity by failing

---

[2] *See* Gang Violence and Juvenile Crime Prevention Act of 1998. (Initiative measure, Ballot Pamp., Primary Elec. (Mar. 7, 2000) (Proposition 21).)

[3] Welf. & Inst. Code, § 707(d)(4): "In any case in which the district attorney or other appropriate prosecuting officer has filed an accusatory pleading against a minor in a court of criminal jurisdiction pursuant to the provisions of this subdivision, the case shall then proceed according to the laws applicable to a criminal case. In conjunction with the preliminary hearing as provided for in Section 738 of the Penal Code, the magistrate shall make a finding that reasonable cause exists to believe that the minor comes within the provisions of this subdivision. If reasonable cause is not established, the criminal court shall transfer the case to juvenile court having jurisdiction in the manner."

to object and, in the alternative, that the magistrate's findings of probable cause to believe that Garcia committed offenses authorizing a Proposition 21 discretionary direct file were equivalent to the missing finding. Pen. Code, §§ 664/187(a), 245(a)(2), 186.22(b)(1); Welf. & Inst. Code, § 707(b)(12), (b)(13), (d)(2)(C)(ii). The court denied the transfer. CT 179-185.

On December 5, 2002 the trial court sentenced Garcia to an aggregate forty-five years to life term in state prison - fifteen years to life for attempted willful, deliberate, and premeditated murder consecutive to twenty years for the personal and intentional use of a firearm and ten years pursuant to the criminal street gang enhancement. CT 218. The superior court subsequently recalled the sentence and held a hearing on Garcia's request for a juvenile disposition.

At the hearing, the court characterized Garcia's prison term of forty-five years to life as "kind of a long sentence for somebody [his] age." The court also stated that the eighteen year term Garcia's counsel had tried unsuccessfully to negotiate was "[p]robably acceptable," but that releasing Garcia "at the time he's twenty-five year old" was inappropriate. The court noted that Garcia had returned to the United States after being deported because he "liked the lifestyle of the gang," that he increased his involvement in illegal gang activities after his return, and that he even shot at someone "to prove he was faithful to the gang." On that record, the court reimposed forty-five years to life sentence to send the message that having "the younger people pull the trigger" will lead to no less harsh a punishment than if "the twenty-two year old gang members" pull the trigger.

**Direct Appeal:**

Garcia filed a direct appeal in the state appellate court on May 22, 2003. Prev. Lod. Doc. No. 1.[4] That appeal raised two issues: (1) the trial court erred when it denied his counsel the opportunity to refresh the eyewitness's recollection using a police report that included her statement to the police at the scene; and (2) the sentence for attempted murder required modification. On May 20, 2004, the Court of Appeal affirmed the conviction, but it remanded the matter to the superior court to modify the judgment. The Court of Appeal directed the trial

---

[4] "Prev. Lod. Doc." refers to documents Respondent previously lodged with the court in connection with the Motion to Dismiss.

3

court to strike the fifteen year to life term for attempted willful, deliberate, and premeditated murder and the consecutive ten year criminal street gang enhancement, and to substitute a term of life with possibility of parole and a fifteen year minimum eligible parole date.

On June 30, 2004, Garcia filed a petition for review in the California Supreme Court. On September 15, 2004, the petition was denied without comment or citation. Garcia did not file a habeas corpus petition in state court.

**Federal Habeas Petition:**

Garcia filed the instant federal habeas petition in United States District Court for the Eastern District of California on December 13, 2005. USDC-E Docket No. 1. The matter was transferred to the Fresno Division on January 12, 2006. USDC-E Docket No. 5. The petition alleges that: (1) Garcia was denied his Sixth Amendment right to confront and cross-examine an eyewitness by refreshing the witness's recollection with a police report containing her statement to the police at the scene; (2) review should be granted based on recent grants of review in two subsequent cases; and (3) Garcia was denied effective assistance of counsel at trial. Garcia had not asserted a claim of ineffective assistance of counsel previously.

On April 13, 2007, Respondent moved to dismiss the petition on the ground that it contained exhausted and unexhausted claims. USDC-E Docket No. 21. On January 16, 2008, Magistrate Judge Wunderlich recommended that Respondent's motion be granted, but that Garcia be given the opportunity to withdraw the unexhausted claim of ineffective assistance of counsel. USDC-E Docket No. 32. Garcia withdrew the unexhausted claim on February 25, 2008. USDC-E Docket No. 33. On November 24, 2008, the matter was reassigned to this Court for further proceedings. USDC-E Docket No. 51.

## II. STANDARD OF REVIEW

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. *Lindh v. Murphy*, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997). This petition was filed after the effective date of AEDPA and is therefore subject to its provisions.

This court may entertain a petition for writ of habeas corpus "in behalf of a person in

Case No. C 06-41 JF
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS
(JFEX1)

custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The AEDPA altered the standard of review that a federal habeas court must apply with respect to a state prisoner's claim that was adjudicated on the merits in state court. *Williams v. Taylor*, 120 S.Ct. 1495, 1518-23 (2000). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); *Lockyer v. Andrade*, 123 S.Ct. 1166, 1173 (2003); *Williams v. Taylor*, 120 S.Ct. 1495, 1523 (2000). "A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Lockyer*, 123 S.Ct. 1163, 1174 (citations omitted). "Rather, that application must be objectively unreasonable." *Id.* (citations omitted).

While habeas corpus relief is an important instrument to assure that individuals are constitutionally protected, *Barefoot v. Estelle*, 463 U.S. 880, 887 (1983), direct review of a criminal conviction is the primary method for a defendant to challenge that conviction. *Brecht v. Abrahamson*, 507 U.S. 619, 633 (1993). In addition, the state court's factual determinations must be presumed correct, and the federal court must accept all factual findings made by the state court unless the petitioner can rebut "the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Purkett v. Elem*, 514 U.S. 765 (1995).

### III. DISCUSSION

**A.     Garcia's Sixth Amendment Right to Confrontation Was Not Violated**

Garcia contends that the trial court violated his right to confront and cross-examine witnesses when it denied his counsel the opportunity to use a police report to refresh the recollection of an eyewitness who had identified him as the shooter. Pet. at 5. Garcia previously raised this claim in the California Court of Appeal and in his petition for review to the California

5

Supreme Court. Prev. Lod. Doc. Nos. 6 & 7.

**1. Applicable Standard**

When reviewing a petition for habeas corpus, federal courts will not interfere with a state court's evidentiary rulings unless the rulings were arbitrary or so prejudicial that they resulted in a trial which was fundamentally unfair in violation of due process and the right to a fair trial. *Windham v. Merkle,* 163 F.3d 1092, 1103 (9th Cir. 1998). Only in unusual cases will it be found that a state court ruling on state evidentiary law invokes a federal issue. *Tinsley v. Borg*, 895 F.2d 520, 530 (9th Cir. 1990).

The confrontation clause of the Sixth Amendment "'guarantees opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'" *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986), quoting *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985). A violation of the confrontation clause is stated by showing that [the defendant] was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby "to expose to the jury the facts from which jurors . . . could appropriately draw inferences relating to the reliability of the witness." *Delaware v. Van Arsdall*, 475 U.S. at 680, quoting *Davis v. Alaska*, 415 U.S. 308, 318 (1974).

**2. Proceedings Below**

At trial, two witnesses testified that Garcia was the person who fired the shotgun. On cross-examination of one of those witnesses, Garcia's counsel asked the witness if she told a police officer that she was "unable to describe the suspects." She replied, "No, I never stated that." The following colloquy ensued:

```
DEFENSE COUNSEL: Q. If I were to show you a portion of [the officer's] report,
would that refresh your recollection?
PROSECUTOR: Objection. Hearsay.
THE COURT: Sustained.
DEFENSE COUNSEL: Pardon?
THE COURT: Sustained.
PROSECUTOR: It's hearsay.
DEFENSE COUNSEL: I'm just asking if it would refresh her recollection.
THE COURT: She didn't prepare the report.
DEFENSE COUNSEL: Pardon?
```

6

```
THE COURT: She didn't prepare the report.
DEFENSE COUNSEL: I wasn't asking to publish it to the jury. I just
wanted to see if
it refreshed her recollection regarding her conversation to [the officer].
PROSECUTOR: You may ask her about that but not about the -
THE COURT: No response.
PROSECUTOR: Sorry, Your Honor.
DEFENSE COUNSEL: Q. If you were to view a portion of [the officer's]
report
regarding the conversation he had with you, would that refresh your
recollection?
PROSECUTOR: Objection. Hearsay.
THE COURT: I don't think you can impeach a witness by using somebody
else's report.
DEFENSE COUNSEL: I'm just asking -
THE COURT: That's my ruling.
```

### 3. No Constitutional Violation Occurred

A trial judge retains "wide latitude" to limit defense counsel's questioning of a witness without violating a defendant's Sixth Amendment rights. *Michigan v. Lucas*, 111 S. Ct. 1743, 1746 (1991); *Delaware v. Van Arsdall*, 475 U.S. at 679. A defendant's right to present evidence is not absolute; he must comply with established rules of evidence and procedure. *Taylor v. Illinois,* 484 U.S. 400, 410-411; *Perry v. Rushen*, 713 F.2d 1447, 1450 (9th Cir. 1983), cert. denied, 469 U.S. 838, 83 L. Ed. 2d 77, 105 S. Ct. 137 (1984).

In this case, defense counsel failed to follow California's rules of criminal procedure and evidence. Counsel attempted to refresh the recollection of a witness who had not testified to a failure of recollection. Absent this foundation, the police report constituted inadmissible hearsay under California law.

In rejecting Garcia's appeal on this point, the state appellate court explained the defense's failure as follows:

> Although the record does not expressly divulge the Evidence Code sections on which counsel and the court relied, we infer from the foregoing colloquy that Garcia's counsel sought to use the officer's report on the authority of Evidence Code section 771 (present recollection refreshed ) and that the court prohibited him from doing so on the authority of Evidence Code section 1237 (past recollection recorded). "A witness may refer to hearsay to refresh his [or her] recollection; however, before doing so the witness must testify he [or she] cannot remember the fact sought to be elicited. [Citation.]" (*People v. Lee* (1990) 219 Cal.App.3d 829, 840.) The attempt by Garcia's counsel to refresh her recollection was ill conceived since the witness had no failure of recollection. The court sustained the prosecutor's objection solely on the ground that someone besides the witness wrote the report.

| | |
|---|---|
| 1 | With regard to past recollection recorded, the Evidence Code requires the writing be "made (i) by the witness himself or under his direction or (ii) by some other person for the purpose of recording the witness' statement at the time it was made," but with regard to present recollection refreshed the Evidence Code imposes no like requirement. (Evid. Code, § 1237; cf. Evid. Code, § 771.) "It should be noted that there is no restriction in the Evidence Code on the means that may be used to refresh recollection. Thus, the limitations on the types of writings that may be used as recorded memory under Section 1237 do not limit the types of writings that may be used to refresh recollection under Section 771." (Cal. Law Revision Com. com., Deering's Ann. Evid. Code (1986 ed.) foll. § 771, p. 400.) Although the court gave the wrong reason for ruling correctly on the prosecutor's objection, a ruling that is correct for the wrong reason will not be disturbed on appeal. (*People v. Vera* (1997) 15 Cal.4th 269, 272.) The court's ruling was not error, so Garcia's confrontation clause argument fails for want of a valid premise. |
| | Even assuming error arguendo, Garcia fails to show prejudice. First, since two eyewitnesses identified him as the person who fired the shotgun blasts, the testimony of each was cumulative to the testimony of the other. Second, although he argues the officer's report "showed [the witness] had told investigating officers she could not even provide a description of the suspect," he cites to nothing in the record to support his argument. "One asserting prejudice has the burden of proving it; a bald assertion of prejudice is not sufficient." *People v. Johnson* (1988) 47 Cal.3d 576, 591; cf. Cal. Rules of Court, rule 14(a)(1)(C) ["Each brief must: [] . . . [] support any reference to a matter in the record by a citation to the record."].) |

The state court's reasoning must be accorded deference by this Court so long as it did not rest on an unreasonable factual determination or conflict with clearly established United States Supreme Court precedent. 28 U.S.C. § 2254(d); *see also McCain v. Gramley*, 96 F.3d 288, 290 (9th Cir 1996) (intermediate court decisions are entitled to deference under the AEDPA). The state court reasonably determined that defense counsel had failed to lay a proper foundation to refresh the witness' recollection. "The attempt by Garcia's counsel to refresh her recollection was ill conceived since the witness had no failure of recollection." Prev. Lod. Doc. No. 6 at 6.

Moreover, the state court's reasoning was consistent with the Supreme Court precedent regarding the presentation of evidence in state courts. A defendant's right to present evidence is not absolute, and he must comply with established rules of evidence and procedure. *Taylor v. Illinois,* 484 U.S. at 410-411. Defense counsel failed to comply with Evidence Code section 771. Garcia is not entitled to federal habeas relief, because the state court reasonably rejected his claim of a violation of the confrontation clause.

**B.     Garcia's Sentence Was Reasonable and Does Not Violate the Constitution or Contravene United States Supreme Court Precedent**

Garcia contends that because the California Supreme Court has granted review of sentences in certain other cases,[5] and because the trial court 'was of two minds' regarding an appropriate sentence, the matter should be remanded for preparation of a new re-sentence report. Pet. at 5.  Garcia previously raised this claim in his state court appeal and in his petition for review in the California Supreme Court.  Prev. Lod. Doc. Nos. 6 & 7.  However, Garcia fails to establish a federal constitutional violation.

**1. Garcia Presents No Federal Question**

Garcia does not specifically identify a federal question.  A claim of state sentencing error does not raise a federal constitutional question. *Lewis v. Jeffers*, 497 U.S. 764, 783 (1990).  The Ninth Circuit has refused to consider state law errors in the application of state sentencing law. *Souch v. Schaivo*, 289 F.3d 616, 623 (9th Cir. 2002); *Christian v. Rhode*, 41 F.3d 461, 469 (9th Cir. 1994); *Hendricks v. Zenon*, 993 F.2d 664, 674 (9th Cir. 1993); *Miller v. Vasquez*, 868 F.2d 1116 ( 9th Cir. 1989) (refusing to examine state's determination that a prior was a serious felony); *Johnson v. Arizona*, 462 F.2d 1352, 1353-54 (9th Cir. 1972) (rules of sentencing adopted by state court do not raise constitutional issues which may be reached by habeas corpus); *Adams v. Eyman*, 418 F.2d 911 (9th Cir. 1969); *Sturm v. California Adult Authority*, 395 F.2d 446, 448 (9th Cir. 1967).  Therefore, to the extent that Garcia claims that there was a violation of California law relating to sentencing, he does not state a cognizable federal question. *Estelle v. McGuire*, 502 U.S. at 68.

---

[5] The principle case cited is *People v. Thomas*, 35 Cal.4th 635 (2005).  There, the California Supreme Court held that the requirement of § 1170.19(a)(4), that the criminal court must secure the prosecutor's consent before it can order a Youth Authority commitment, violates the state Constitution's separation of powers doctrine. *Id*. at 642.  It further held that because the defendant admitted committing robbery and personally using a firearm in the commission of a felony, his sentence, when added to his age, exceeded 25 years, which made him ineligible for a Youth Authority commitment under Cal. Welf. & Inst. Code, § 1732.6(a). *Id*. at 643.

**2. Proceedings Below**

As noted above, the state trial court recalled the sentence and held a hearing on Garcia's request for a juvenile disposition. Pen. Code, §§ 1170(d), 1170.19(a)(4); Welf. & Inst. Code, § 707(d)(6).

> At the hearing, the court characterized as "kind of a long sentence for somebody [his] age" Garcia's 45-to-life term, as [p]robably' acceptable the 18-year term his counsel had tried to no avail to negotiate, and as inappropriate the notion "he be released at the time he's 25 years, in seven years." The court noted that Garcia returned to the United States after his deportation because "he liked the lifestyle of the gang," that he increased his involvement in illegal gang activities after his return, and that he even shot at someone "to prove he was faithful to the gang." On that record, the court imposed the identical adult sentence as before to send the message that having "the younger people pull the trigger" leads to no less harsh punishment than if "the 22-year-old gang members" pull the trigger.

Prev. Lod. Doc. No. 6 at 3.3.

**3. The State Court Did Not Make an Unreasonable Factual Determination Or Contravene Clearly Established United States Supreme Court Precedent**

In rejecting his claim, the state appellate court explained Garcia's failure as follows:

> The narrow question the record here poses is whether Penal Code section 1170.19, subdivision (a)(4) requires the court to receive in evidence, read, and consider a social study by the probation officer prior to imposing an adult sentence on a Proposition 21 discretionary direct file. The language of the statute answers that question in the negative:
>
> "Subject to the knowing and intelligent consent of both the prosecution and the person being sentenced pursuant to this section, the court may order a juvenile disposition under the juvenile court law, in lieu of a sentence under this code, upon a finding that such an order would serve the best interests of justice, protection of the community, and the person being sentenced. *Prior to ordering a juvenile disposition*, the court shall cause to be received into evidence a social study by the probation officer, prepared pursuant to Section 706 of the Welfare and Institutions Code, and shall state that the social study made by the probation officer has been read and considered by the court."
> Pen. Code, § 1170.19 (a)(4), italics added.
>
> Penal Code section 1170.19, subdivision (a)(4) incorporates by reference Welfare and Institutions Code section 706, which requires the court to receive in evidence, read, and consider a social study by the probation officer after a Welfare and Institutions Code section 601 or 602 finding:
>
> "*After finding that a minor is a person described in Section 601 or 602*, the court shall hear evidence on the question of the proper disposition to be made of the minor. The court shall receive in evidence the social study of the minor

10

> made by the probation officer and any other relevant and material evidence that may be offered, including any written or oral statement offered by the victim, the parent or guardian of the victim if the victim is a minor, or if the victim has died or is incapacitated, the victim's next of kin, as authorized by subdivision (b) of Section 656.2.  In any judgment and order of disposition, the court shall state that the social study made by the probation officer has been read and that the social study and any statement has been considered by the court." Welf. & Inst. Code, § 706, italics added.
>
> Here, the prosecutor's choice of a Proposition 21 discretionary direct file necessarily obviated a "finding that [Garcia] [was] a person described in Section 601 or 602." (Welf. & Inst. Code, § 706; see Proposition 21.) Since Welfare and Institutions Code section 706 was adopted and amended before Proposition 21 and neither amended by or after Proposition 21, the statute cannot possibly, and indeed does not, impose a requirement that the court receive in evidence, read, and consider a social study by the probation officer prior to imposing an adult sentence on a Proposition 21 discretionary direct file.(Added by Stats. 1961, ch. 1616, § 2. Amended by Stats. 1976, ch. 1068, § 50; Stats. 1995, ch. 234, § 3.) Again, the language of the statute answers in the negative the question before us.
>
> The "fundamental task of statutory construction is to '"ascertain the intent of the lawmakers so as to effectuate the purpose of the law."' (*People v. Cruz* (1996) 13 Cal.4th 764, 774-775.) If the language is clear, the plain meaning of the words is determinative, and there is ordinarily no need to look beyond the statute itself.  *People v. Benson* (1998) 18 Cal.4th 24, 30.) Since the language of both Penal Code section 1170.19, subdivision (a)(4) and Welfare and Institutions Code section 706 is clear that the court has no duty to receive in evidence, read, and consider a social study by the probation officer prior to imposing an adult sentence on a Proposition 21 discretionary direct file, we have no need to look beyond the statutory language.
>
> Defendants are entitled to sentencing decisions made in the exercise of the "informed discretion" of the sentencing court.' *People v. Belmontes* (1983) 34 Cal.3d 335, 348, fn. 8, quoting *United States v. Tucker* (1972) 404 U.S. 443, 447; see *Townsend v. Burke* (1948) 334 U.S. 736, 741; *People v. Austin* (1981) 30 Cal.3d 155, 160-161.  Here, the court carefully considered facts about Garcia and his crimes and thoughtfully evaluated criminal and juvenile dispositions alike before exercising informed discretion to impose an adult sentence. On that record, the court did not err in making that sentencing decision without having received in evidence, read, and considered a social study by the probation officer.

(Prev. Lod. Doc. No. 6 at 7-9.)

The state court's reasoning on this matter must be accorded deference by this Court so long as it did not rest on an unreasonable factual determination or conflict with clearly established United States Supreme Court precedent.  28 U.S.C. § 2254(d); *see also McCain*, 96 F.3d at 290 (intermediate court decisions are entitled to deference under the AEDPA).  On federal habeas review, relief is available only for arbitrary and capricious sentencing actions. *Richmond v. Lewis*,

11

506 U.S. 40, 50 (1992).  The prosecutor opted to charge Garcia as an adult under Proposition 21, thus excluding him from treatment as a juvenile offender.  The state court reasonably determined, according to the plain language of the statute, that there was no requirement that it receive in evidence, read, and consider a social study by the probation officer prior to imposing an adult sentence on a Proposition 21 discretionary direct file.  The state appellate court noted that the trial court carefully considered its options at re-sentencing before exercising its discretion to confirm its decision to sentence Garcia as an adult.  Prev. Lod. Doc. No. 6 at 8-9.  There was nothing arbitrary or capricious in the trial court's imposition of a sentence allowed by law.  CT 217-218. Accordingly, the state appellate court's reasoning did not rest on an unreasonable factual determination.  Moreover, in finding that the trial court had exercised its informed sentencing discretion to impose an adult sentence, the state court did not contravene clearly established United States Supreme Court precedent relating to arbitrary and capricious sentencing decisions. *See Richmond v. Lewis, supra*, 506 U.S. at 50.

### IV. ORDER

Accordingly, the petition for writ of habeas corpus is DENIED.  The Clerk shall enter judgment and close the file.

DATED:  9/29/2009

_____
JEREMY FOGEL
United States District Judge